# In the United States Court of Federal Claims

No. 09-642 C

(E-Filed: October 8, 2010)

|  |  |  |
|---|---|---|
| THE MARQUARDT COMPANY, | ) | Motion to Dismiss Claims for |
|  | ) | Interest Under the Contract |
| Plaintiff, | ) | Disputes Act, 41 U.S.C. §§ 601- |
| v. | ) | 13 (2006), and the Prompt |
|  | ) | Payment Act, 31 U.S.C. §§ |
| THE UNITED STATES, | ) | 3901-07 (2006), and Related |
|  | ) | Claims for Declaratory Relief |
| Defendant. | ) |  |
|  | ) |  |

Joshua C. Drewitz, Washington, DC, for plaintiff; Daniel P. Wierzba and Michael B. Hubbard, Washington, DC, of counsel.

Steven J. Abelson, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant; Douglas Jacobson, Fort Snelling, MN, of counsel.

OPINION

HEWITT, Chief Judge

Before the court are plaintiff's Complaint (Compl.) and attached exhibits (Plaintiff's Exhibits or PX), Docket Number (Dkt. No.) 1; Defendant's Answer to Plaintiff's Complaint, Dkt. No. 6; Defendant's Motion to Dismiss Count II, Count III, and Portions of Count IV of Plaintiff's Complaint (Motion to Dismiss or Def.'s Motion), Dkt. No. 11; The Marquardt Company's Opposition to the Government's Motion to Dismiss Count II, Count III and Portions of Count IV (Pl.'s Response), Dkt. No. 14; and Defendant's Reply to the Marquardt Company's Opposition to Defendant's Motion to Dismiss Count II, Count III, and Portions of Count IV (Def.'s Reply), Dkt. No. 18.

I.	Background[1]

Plaintiff, The Marquardt Corporation (plaintiff or TMC), filed suit in the United States Court of Federal Claims (Court of Federal Claims) on September 29, 2009 claiming breach by the United States (defendant or the government), acting through an Administrative Contracting Officer (ACO) in the Defense Contract Management Agency (DCMA), of its contract (the Agreement) with TMC, executed on November 22, 2006. Compl. ¶ 3.  TMC asserts that, as a result of the government's breach, the government owes it the balance remaining under the Agreement, $403,912.45, plus interest.  Id. ¶¶ 34, 36, 37, 40.  The Agreement is attached as the first exhibit to plaintiff's Complaint.  See PX 1 (Agreement).

The Agreement--the document at the center of this controversy--states, in a preamble, that "the parties agree that it is in their best interest to resolve and settle the final payment amounts due" under a number of governmental supply contacts (the Contracts) now held by TMC following various transactions and a bankruptcy proceeding described briefly in the preamble to the Agreement.[2]  PX 1 (Agreement) 2.  Plaintiff's Complaint and briefing go into some detail about the nature of the payments due on the underlying contracts but, because the issues before the court involve obligations under the Agreement, the court focuses its attention there.

Under the terms of the Agreement, the parties agreed that the total amount owed to TMC on a "contract-by-contract basis" was $1,437,194.58.  PX 1 (Agreement) 3.  The Agreement recites that the parties are entering into it "with the understanding that not all funding necessary to meet the government's payment obligations hereunder [is] presently available for such purposes."  Id.

Rather, "Upon execution of this Agreement the government shall use its best efforts to obtain in an expeditious manner the funding required to meet its payment obligation of $1,437,194.58."  Id.

---

[1] The facts described in this Opinion are taken from plaintiff's Complaint (Compl.) and the exhibits (PX) attached to plaintiff's Complaint.

[2] The exact number of contracts addressed by the Agreement (the Contracts) is not entirely clear. The Complaint states that there were twenty-three supply contracts.  Compl. ¶ 3.  However, the exhibits attached to plaintiff's Complaint contradict each other.  One list of contracts contains twenty-seven entries, PX 1 Schedule A (The Contracts) 1, while the list on the next page contains twenty-three.  PX 1 Schedule B (Final Payment Amounts) 1.  Plaintiff's claim states there were twenty-seven contracts.  PX 2 (Claim) 2.

The Agreement contains neither a date by which the government is to make payment nor any provision for interest payments should the government not have paid all amounts due on or before any set date.  See PX 1 (Agreement) passim.

TMC asserts that the government made no payments under the Agreement for approximately eighteen months and that, during that time, inquiries made by TMC employees in person, by phone and by email were rebuffed.  Compl. ¶ 18.  On May 12, 2008 TMC submitted what it characterizes as a Certified Claim to an ACO in DCMA's Los Angeles office.  Comp. ¶ 20-21.  In that claim, TMC demanded the $1,437,194.58 due under the Agreement, $77,897.96 in interest under the Prompt Payment Act (PPA), 31 U.S.C. §§ 3901-07 (2006), and interest under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-13 (2006), from the day on which it made its claim until the full payment of the amount due.  Compl. ¶ 21.  Plaintiff states that on or around June 9, 2008 the government sent TMC $15,258.45 without explanation and without referring to TMC's claim.  Id. ¶ 22.  On July 16, 2008 the ACO sent TMC a letter invoking 48 C.F.R. (FAR) § 33.211(c)(2) and (d) (2010).[3]  Id. ¶ 23; PX 3 (July ACO Letter) 1.  Those provisions afford a contracting officer an additional 60 days to respond to a claim in an amount over $100,000.  48 C.F.R. § 33.211(c)(2), (d).  The government subsequently sent TMC a payment of $40,633.10 on or about July 18, 2008 and a payment of $977,390.58 on or about September 18, 2008.  Compl. ¶ 25.  TMC's Complaint states that $403,912.45 is still owing under the Agreement.  Id.

In a letter dated September 30, 2008, the ACO declined to issue a final decision.  PX 4 (September ACO Letter) 2.  The Agreement, the ACO wrote, falls outside of the FAR's definition of a contract and does not obligate the government to pay anything at

---

[3]Federal Acquisition Regulation (FAR) Section 33.211 states in part:

> (c) The contracting officer shall issue the decision within the following statutory time limitations:
>> . . . .
>> (2) For claims over $100,000, 60 days after receiving a certified claim; provided, however, that if a decision will not be issued within 60 days, the contracting officer shall notify the contractor, within that period, of the time within which a decision will be issued.
>
> (d) The contracting officer shall issue a decision within a reasonable time, taking into account--
>> (1) The size and complexity of the claim;
>> (2) The adequacy of the contractor's supporting data; and
>> (3) Any other relevant factors.

48 C.F.R. § 33.211 (2010).

all. Id. at 1-2. The letter noted that the Agreement did not have a contract number, funding, or the dispute clause set out in FAR 52.233-1.[4] Id. at 2. The ACO stated that "[T]he Agreement merely attempted to reconcile, in a single document, the amounts potentially owed under the 23 underlying contracts." Id. at 1. The ACO's letter concluded, "I do not believe that a final decision by the Administrative Contracting Officer is required under FAR 33.211."[5] Id. at 2.

Plaintiff filed suit in the Court of Federal Claims on September 19, 2010 asserting breach of contract and demanding the principal amount of $403,912.45, interest under the PPA and CDA, and a declaratory judgment that the Agreement was binding and that the government owes interest pursuant to the CDA and an interest penalty under the PPA. Defendant moved to dismiss both of plaintiff's claims for interest and plaintiff's claims for corresponding declaratory relief under Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC).

II.     Legal Standards

   A.     Jurisdiction Under the Tucker Act

The Tucker Act, 28 U.S.C. § 1491(a)(1), grants the Court of Federal Claims jurisdiction to hear certain monetary claims against the United States government. 28 U.S.C. § 1491(a)(1) (2006) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ."). The Tucker Act is a jurisdictional statute that "does not create any substantive right enforceable against the United States for money damages," United States v. Testan, 424 U.S. 392, 398 (1976), but merely confers jurisdiction when such a right is conferred by a statute or a contract. Terran ex rel. Terran v. Sec'y of Health & Human Servs., 195 F.3d 1302, 1309 (Fed. Cir. 1999); Brown v. United States, 86 F.3d 1554, 1559 (Fed. Cir. 1996).

   B.     Motion to Dismiss

RCFC 12(b)(6) provides for dismissal of a claim based on a "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). "When considering a motion

---

[4]FAR 52.233-1 directs drafters to insert a "dispute clause" into government contracts, stating that they are subject to the Contract Disputes Act (CDA), 41 U.S.C. §§ 601-13 (2006), and setting out the process for making and pursuing a claim under the CDA. 48 C.F.R. § 52-233-1.

[5]FAR 33.211 sets out the process contracting officers are to use when reviewing claims made under the CDA and when issuing decisions. 48 C.F.R. § 33.211.

to dismiss, the trial court views well-pleaded factual allegations in the complaint as true." Nw. La. Fish & Game Pres. Comm'n v. United States, 574 F.3d 1386, 1390 (Fed. Cir. 2009) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)). "In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

  C. Interest Under the Contract Disputes Act

It is well settled that interest will not be awarded in suits against the United States government unless expressly provided for by statute or by contract. United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 590 (1947); Library of Congress v. Shaw, 478 U.S. 310, 316 (1986). The framework that Congress set out in the CDA provides for interest on claims that are ultimately successful. 41 U.S.C. § 611. Interest accrues from the date when the claim is filed with the contracting officer to the date when final payment is made. Id. However, not every agreement the government enters into is a contract covered by the CDA. The CDA covers contracts for procurement and disposal of personal property, for procurement of services, and for procurements affecting real property:

> Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for--
>
> (1) the procurement of property, other than real property in being;
>
> (2) the procurement of services;
>
> (3) the procurement of construction, alteration, repair or maintenance of real property; or,
>
> (4) the disposal of personal property.

41 U.S.C. § 602. For convenience, the court refers to contracts covered by the CDA as "contracts for goods or services." See Coastal Corp. v. United States (Coastal), 713 F.2d 728, 730 (Fed. Cir. 1983). Plaintiff's Complaint claims, and defendant disputes, that the Agreement is covered by the CDA.

  D. Interest Under the Prompt Payment Act

The PPA requires that the head of an agency pay an "interest penalty" when the agency acquires "property or service from a business concern" and the agency fails to pay for each "complete delivered item of property or service" before the required payment date. 31 U.S.C. § 3902(a).

The interest penalty "shall be paid for the period beginning on the day after the required payment date and ending on the date on which payment is made." 31. U.S.C. § 3902(b). Interest ceases to accrue one year after the required payment date or on the earlier date when a claim is filed under the CDA. 31 U.S.C. § 3907(b)(1). The interest penalty is to be paid regardless of whether the business concern has requested it. 31 U.S.C. § 3902(c).

### E.  Declaratory Judgment

"This Court may issue declaratory judgments or offer equitable relief only under an express grant of such jurisdiction in a federal statute." Leitner v. United States, 92 Fed. Cl. 220, 223 (2010), (citing Testan, 424 U.S. at 398).

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, does not apply to this court. 28 U.S.C. §§ 2201-2202; United States v. King, 395 U.S. 1, 5 (1969) ("There is not a single indication in the Declaratory Judgment Act or its history that Congress, in passing that Act, intended to give the Court of Claims an expanded jurisdiction that had been denied to it for nearly a century."); In re Wick, 40 F.3d 367, 372 (Fed. Cir. 1994) (quoting King).

The Court of Federal Claims does have jurisdiction, however, to grant certain types of declaratory relief in disputes under the CDA:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2); Alliant Techsystems, Inc. v. United States (Alliant), 178 F.3d 1260, 1277 (Fed. Cir. 1999) (upholding trial court's determination that it had jurisdiction to hear a claim for declaratory relief). In suits under the Tucker Act, certain types of equitable relief are available "to provide an entire remedy" when "incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2); Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992); Del Rio v. United States, 87 Fed. Cl. 536,

540 (2009). Declaratory Relief is also available in bid protest cases under the Administrative Dispute Resolution Act, 28 U.S.C. § 1491(b)(2) (2006) ("[T]he courts may award any relief that the court considers proper, including declaratory and injunctive relief . . . .").

III.    Discussion

Defendant moves to dismiss TMC's claims for interest under the CDA and the PPA, contending that neither statute applies to the Agreement. Because the Agreement is not a contract for goods or services (as required by the CDA) and does not cover the acquisition of "property or service" (as required by the PPA), the court finds that interest is not available under either statute.

    A.    Interest Under the CDA

Count III of plaintiff's Complaint asserts that "TMC is entitled to interest under the Contract Disputes Act, 41 U.S.C. § 611, from May 12, 2008 [the date the claim was filed] until TMC has been paid in full the amounts due under the Contract." Compl. ¶ 40.

The CDA applies only to contracts that procure goods and services. See 41 U.S.C. § 602. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has concluded that the CDA does not apply to contracts "tangentially connected with government procurement of goods and services." Coastal, 713 F.2d at 730. In Coastal, the Federal Circuit considered whether the CDA granted the Department of Energy Board of Contract Appeals jurisdiction to hear a claim by a bidder who contended that the government had breached an implied contract to give bids "fair and honest consideration." Id. The court noted that any such contract, if it existed, was "preliminary and ancillary to any contract . . . the government might enter into for goods or services. It was not itself such a contract, however." Id.; see also Rider v. United States, 7 Cl. Ct. 770 (1985) (concluding that the CDA does not apply when the government contracts to provide a service rather than receive one), aff'd, 790 F.2d 91 (Fed. Cir. 1986) (Table).

The Agreement outlines a prospective settlement arrangement between the government and TMC, the successor in interest to a corporation that entered bankruptcy before collecting the amount due on supply contracts it had already performed. PX 1 (Agreement) 2. The Agreement does not cover the procurement of goods or services, or even amend the underlying contracts. Instead, it "settle[s] and resolve[s] [the] remaining Government obligations under the Contracts"--obligations that ceased to accrue in 1992, fourteen years before the Agreement was signed. Id. at 2-3.

The American Heritage Dictionary defines tangential as "[m]erely touching or slightly connected." American Heritage Dictionary of the English Language, 1767 (4th

7

ed. 2000). The contract in Coastal merely touched a possible contract subsequently to be formed for goods or services by determining how bids would be evaluated. Coastal, 713 F.2d at 730. In this case, the Agreement merely touches the underlying contracts by provisionally[6] determining the amount due to TMC. The government does not obtain goods or services under the Agreement. The contract in Coastal was preliminary to a possible, subsequent contract. Here, the Agreement followed the Contracts by many years and had no effect on the procurement of goods or services.[7] Like the contract in Coastal, the Agreement is only slightly connected to contracts for goods or services.

Plaintiff argues, quoting Sarang Corp. v. United States (Sarang), 76 Fed. Cl. 560, 569 (2007), that the Agreement is "sufficiently related" to the underlying contracts for goods and services such that the CDA applies. Pl.'s Response 8. In Sarang, the trial court determined that the CDA and PPA applied to a settlement agreement. Sarang, 76 Fed. Cl. at 569. This court is bound, however, by the Federal Circuit's precedent, which the court views as dispositive of the issue in this case. "Congress explicitly specified the types of contract that it intended the Act to cover." Coastal, 713 F.2d at 730. The Agreement simply does not procure goods or services. Any goods or services tangentially related to the Agreement were "procured" many years ago. Because the Agreement is at most tangential to government procurement of goods or services, it is not covered by the CDA.

Because the Agreement is not the type of contract to which the CDA applies, Count III fails to state a claim upon which relief can be granted.

  B.  Interest Under the PPA

Count II of plaintiff's Complaint asserts that TMC is entitled to twelve months of interest under the PPA.

The PPA, like the CDA, applies only to certain contracts: "[T]he head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty . . . ." 31 U.S.C. § 3902(a); see also Boers v. United States, 44 Fed. Cl. 725, 732 (1992) (finding that the United States Department of

---

[6]The Agreement is provisional because the Agreement does not anticipate a time for performance and provides that, if the government fails to pay, plaintiff's rights under the Contracts are to be "preserved and remain in full force and effect." PX 1 (Agreement) 3.

[7]It is not clear from the pleadings when the goods or services were delivered, but the costs the Agreement pertains to were incurred between 1984 and 1992, approximately fourteen years before the Agreement was signed. Compl. ¶ 10.

Agriculture, acting on a statutory obligation to indemnify dairy farmers for losses resulting from disposal of contaminated milk, was not acquiring property or services), aff'd, 243 F.3d 561 (Fed. Cir. 2000) (Table), reh'g and reh'g en banc denied (2000), cert. denied, 531 U.S. 1179 (2001).  The parties' Agreement, by contrast, did not require any "complete delivered item of property or service." Cf. 31 U.S.C. § 3902(a).  Nor does the Agreement contain a "required payment date." Cf. 31 U.S.C. § 3902(a).  The Agreement merely seeks to reconcile the amount due on supply contracts signed and performed long ago.[8]

"[I]nterest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress." Library of Congress, 478 U.S. at 315.  "[I]n interpreting the Prompt Payment Act, this court may not enlarge the waiver of sovereign immunity beyond what the language of the Act requires." FDL Techs. v. United States, 967 F.2d 1578, 1581 (Fed. Cir. 1992) (citing Library of Congress, 478 U.S. at 318); accord Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 798 (Fed. Cir. 1993).

The terms of the Agreement do not include a "required payment day," cf. 31 U.S.C. § 3902(a), or, indeed, require any payment at all.[9]  The parties acknowledged in the Agreement that the funds referred to were not "presently available." PX 1 (Agreement) 3.  The government was to "use its best efforts to obtain in an expeditious manner the funding required," but no payment date was set. Id.  TMC agreed, upon receipt of the full amount, to "release and discharge the government, its officers, agents, and employees of from [sic] all liabilities, obligations, claims, appeals and demands . . . arising under or in any way related to the Contracts." Id.

The Agreement specifically addressed what would happen "[in] the event the government is unable to secure funding to meet the payment obligations to TMC . . . ." Id.  In that event, "TMC shall not be deemed to have released the government and TMC's rights under the Contracts shall be preserved and remain in full force and effect." Id.  However, TMC's Complaint does not rely on the Contracts.  The Complaint relies entirely on the Agreement. See Compl. passim.

---

[8] Plaintiff asserts that the Agreement is "related to ... contracts for the procurement of property or services, as required under the PPA." The Marquardt Company's Opposition to the government's Motion to Dismiss Count II, Count III and Portions of Count IV 9.  "Related to" a contract for property or services, however, is not the relevant standard. See 31 U.S.C. 3902(a) (2006).

[9] Because the Agreement does not state a required payment day, it is not clear that interest could ever begin to accrue under the PPA.

Because the PPA does not apply to the Agreement, Count II fails to state a claim upon which relief can be granted.

C.   Declaratory Judgment

Count IV of plaintiff's Complaint requests declaratory relief. Compl. ¶¶ 41-49. Defendant's Motion to Dismiss asks that the court dismiss the portions of Count IV that relate to interest under the CDA and PPA. The court has concluded that the CDA and PPA do not apply to the Agreement. The portions of Count IV that request a declaratory judgment that plaintiff is owed interest under the CDA and PPA fail to state a claim upon which relief can be granted.

IV.   Conclusion

For the reasons stated above, the court GRANTS defendant's Motion to Dismiss.

IT IS SO ORDERED.

                                        s/ Emily C. Hewitt
                                        EMILY C. HEWITT
                                        Chief Judge